Alan S. Golub, Esq. – Attorney ID No. 025461993 (agolub@fskslaw.com)
Gregg P. Tabakin – Attorney ID No. 017521980 (gtabakin@fskslaw.com)
Fein, Such, Kahn & Shepard, P.C.
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
Telephone: 973-538-4700
Facsimile: 973-397-2976

*Attorneys for Plaintiff RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY,**<br><br>Plaintiff,<br><br>vs.<br><br>**SAI VARUNI PHARMACY, LLC D/B/A METRO PHARMACY, SAI CHANDI PHARMACY, LLC D/B/A QUICKSTOP PHARMACY, BHAVANI DONEPUDI, AND JOHN DOES 1 – 10,**<br><br>Defendants. | CIVIL ACTION NO.<br><br><br>**COMPLAINT<br>(AND JURY DEMAND)** |

Plaintiff Rutgers, The State University of New Jersey ("Plaintiff" or "Rutgers")**,** by its attorneys, for its complaint against Sai Varuni Pharmacy, LLC d/b/a Metro Pharmacy ("Metro"), Sai Chandi Pharmacy, LLC d/b/a QuickStop Pharmacy ("QuickStop") (Metro and QuickStop are hereinafter collectively referred to as the "Pharmacy Defendants"), and Bhavani Donepudi ("Donepudi"), an individual member and the manager of both Metro and QuickStop, hereby alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action by Plaintiff Rutgers against the Pharmacy Defendants, Donepudi, and John Does 1 - 10 for breach of contract, conversion, unjust enrichment, fraudulent representation, negligent misrepresentation, and violations of the Section 340B Drug Pricing Program (the "340B Program") under the Public Health Service Act, 42 U.S.C. § 256b (the "Act").

## THE PARTIES

2.    Rutgers is a preeminent State university with locations in three major New Jersey cities, including a principal office at 7 College Avenue, New Brunswick, New Jersey  08901.

3.    Rutgers is also home to the New Jersey Medical School at Rutgers, with its principal office located in the Medical Science Building at 185 South Orange Avenue, Newark, NJ 07103.

4.    Metro Pharmacy is a limited liability company formed under the laws of the State of New Jersey and authorized to conduct business in the State of New Jersey, with a principal place of business at 727 Frelinghuysen Ave, Newark, New Jersey 07114.

5.    QuickStop Pharmacy is a limited liability company formed under the laws of the State of New Jersey and authorized to conduct business in the State of New Jersey, with a principal place of business at 198 Market Street, Newark, New Jersey 07102.

6.    On information and belief, defendant Donepudi is a resident of the State of New Jersey with a primary residence located at 14 Sterlight Drive, Mount Laurel, New Jersey 08054.

7.    On information and belief, defendant Donepudi is an Owner and Manager of both Pharmacy Defendants.

8.    Upon information and belief, John Does 1- 10 are presently unknown other individuals with ownership interests and/or managerial involvement in one or both of Pharmacy Defendants' operations, including but not limited to the matters alleged herein.

## JURISDICTION AND VENUE

9.    This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States) insofar as the claims asserted hereunder are based on plaintiff Rutgers' status as a "Covered Entity" as defined in Section 340B of the Public Health Service Act (the "Act"), 42 U.S.C. § 256b (the Federal 340B Drug-Pricing Program, hereinafter the "340B Program"). This Court has supplemental jurisdiction over the claims in this Complaint that arise under statutory and common law pursuant to 28 U.S.C. § 1367(a).

10.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, as on information and belief,

a substantial part of the events or omissions giving rise to the claims occurred within this District.

## FACT COMMON TO ALL COUNTS

11.   The New Jersey Medical School at Rutgers (the "NJ Medical School") offers a broad range of training for careers in the medical field, innovative clinical research, and clinical health care services.

12.   The NJ Medical School's clinical programs focus on early student exposure to patient care, clinical skills, and hands-on simulations, with strong emphasis on service learning and a focus on the health of the underserved and vulnerable population in the local community.

13.   The NJ Medical School's Division of Infectious Diseases oversees two such clinical programs: (a) a Ryan White funded outpatient center for the care and treatment of HIV/AIDS infection in adults ages 16 and older (the "RW Clinic"), and (b) a Sexually Transmitted Disease clinic (the "STD Clinic"). The RW Clinic and the STD Clinic are hereinafter collectively referred to as the "Rutgers Clinics."

14.   The Rutgers Clinics serve the local community by providing quality outpatient medical care and support services to all people regardless of their sexual orientation, race, or ability to pay.

15.   In order to serve as a vital medical care and support services resource to the local community, the Rutgers Clinics rely on a variety of Federal and State programs designed to make such programs financially sustainable.

16.   One such program is the 340B Program, overseen by the Health Resources and Services Administration ("HRSA") within the United States Department of Health and Human Services, which requires participating pharmaceutical manufacturers to provide certain outpatient prescription drugs, clinic-administered drugs, and over-the-counter drugs to eligible health care organizations, known as "Covered Entities" under the Program, at significantly reduced prices.

17.   With the cost savings realized under the 340B Program, Covered Entities can reduce prices for patients, expand their services, treat more patients, and ultimately, improve overall patient care.

18.   Both Rutgers Clinics are registered as Covered Entities under the 340B Program and are eligible to participate in same.

19.   Under the Program, a "Covered Entity" that does not have its own pharmacy is permitted to contract with outside pharmacies to provide covered outpatient drugs to its patients.

20.   The benefits of utilizing a contract pharmacy include potentially increasing patient access to 340B drugs by partnering with local pharmacies that provide more flexible hours and convenient locations for eligible patients and eliminating many potentially significant administrative and overhead burdens associated with operating an in-house pharmacy.

21.   While a contract pharmacy must register with HRSA in order to participate in the 340B Program, the Covered Entity remains responsible to ensure the contract pharmacy's compliance with the Act and all HRSA guidelines.

22.   On or about July 15, 2019, Rutgers sought to leverage the benefits of utilizing outside pharmacies to provide discounted outpatient drugs to patients of its Rutgers Clinics by entering into a Pharmacy Services Agreement (the "PSA") with Metro and QuickStop, which served as contract pharmacies for the Rutgers Clinics, and with 340Basics, Inc. ("340Basics"), an experienced third-party administrator ("TPA") of 340B programs.

23.   Under the PSA, the Pharmacy Defendants were responsible for dispensing 340B medications to eligible patients of the Rutgers Clinics, charging only the 340B drug prices authorized under the Act, collecting copayments from those eligible patients, and submitting all claims to the Pharmacy Defendants' "Switch" company which, in turn, dealt with 340Basics.

24.   340Basics was responsible under the PSA to collect claims data from the Switch company, verify patient eligibility, track inventory of covered medications, and replenish inventory for the Pharmacy Defendants once certain use thresholds were met.

25.   As consideration for its participation in Rutgers' 340B Program, the Pharmacy Defendants were entitled to collect a "Dispense Fee" for each eligible prescription provided to an eligible patient.

26.   The Dispense Fees were expressly set forth in an Exhibit A to two Addenda (one for each Rutgers Clinic) to the PSA as follows:

      1. The Pharmacy Dispense Fee for Uninsured Patient claims shall be $10.

> 2. The Pharmacy Dispense Fee for both MCO [Managed Care Organizations] and 3rd Party Claims shall 11% of Total Claim Reimbursement.

27.   Implementation of Rutgers' 340B Program under the PSA included custom software provided by 340Basics which tracked all transactional aspects of the program, including eligible prescription sales by the Pharmacy Defendants, co-pays made by eligible patients, the Dispense Fees earned by the Pharmacy Defendants on each transaction, and the amount due to Rutgers once each claim was processed, net of the Pharmacy Defendants' Dispense Fees.

28.   Under Paragraph 9.1c of the PSA, the Pharmacy Defendants were required to "[m]aintain all required records and reports required under this Agreement and all applicable to Federal, State, and local laws and regulations."

29.   Paragraph 12 of the PSA makes clear that the Pharmacy Defendants are subject to audits of records related to their implementation of the 340B Program on behalf of Rutgers, and that the Pharmacy Defendants consent to desktop audits by 340Basics on behalf of Rutgers to ensure compliance by the Pharmacy Defendants.

30.   The effective start date of the 340B Program for both the RW Clinic and the STD Clinic was April 2020.

31.   Between April 2020 and October 2020, Rutgers paid wholesaler drug costs for covered prescriptions under the 340B Program, and the covered prescriptions were dispensed by Metro and QuickStop to eligible patients from both Rutgers Clinics.

32.   Under Paragraph 6.4 of the PSA, Rutgers and 340Basics created a 340B operating account (the "Operating Account") for the processing of all revenue generated under the program.

33.   The Pharmacy Defendants were obligated to deposit all such revenue into the Operating Account, less their authorized Dispense Fees.

34.   With prescription claim capture commencing in April 2020, Rutgers reasonably anticipated that the Pharmacy Defendants would commence deposits to the Operating Account within 30-60 days.

35.   The Pharmacy Defendants never made any deposits to the Operating Account.

36.   Beginning on or about July 13, 2020, Rutgers contacted defendant Donepudi, an owner and manager of both Metro and QuickStop, and asked him to complete an ACH form for both Pharmacy Defendants in order to expedite payment to Rutgers "as soon as possible as copays for dispenses from April/May were due to be electronically debited in June/July."

37.   Although Donepudi initially agreed to complete the ACH form in order to expedite payments to Rutgers, he never returned the completed form, and the delays in making any payments to Rutgers continued.

38.   Between in or around April 2020 and November 5, 2020, Rutgers and 340Basics made multiple efforts to communicate with defendant Donepudi to discuss the Pharmacy Defendants' failure to pay, solutions for the timely processing of payments, a timetable for bringing all accounts up to date, and conference calls or meetings to review the backup documentation for all 340B Program transactions in order to confirm all amounts owed to Rutgers.

39.   Most of these communication efforts were initially ignored by Donepudi, after which he apologized for the delay and proffered technical or ministerial excuses for failing to make the requisite payments.

40.   These excuses served only to buy Donepudi and the Pharmacy Defendants more time to delay making required 340B Program payments to Rutgers under the PSA.

41.   For example, Donepudi intentionally delayed payment to Rutgers based on the following excuses:  (a) he was confused about the payment protocol that Pharmacy Defendants were required to follow under the PSA; (b) he was unable to access the 340Basics portal; (c) he lost his portal credentials; and (d) he needed Rutgers to send and/or re-send to him copies of copay statements that were equally and readily available to him through the 340Basics portal.

42.   On several occasions between July 2020 and October 2020, Donepudi knowingly made false promises to pay the amount owed to Rutgers by a date certain, only to consistently fail to make the promised payment on the promised date.

43.   By mid-October, seven months after the Program began and over seven hundred thousand

dollars in arrears, the Pharmacy Defendants finally made their first payments to Rutgers, cutting eight checks totaling $212,349.57. As reflected in the table[1] below, which includes credits for these October partial payments, the Pharmacy Defendants still owe Rutgers the Amount Due of **$514,875.87**:

| Pharmacy/340B Program | Insurance Reimbursement- Paid to Pharmacy | Pharmacy Fees (Quickstop & Metro's 11% and Dispense Fees) | Switch Fees True Up | Total Amt Due to Rutgers | Amt Paid by Pharmacy | Total Remaining Balance Due |
|---|---|---|---|---|---|---|
| Quick Stop **(RW)** | $ 508,060.48 | $ (55,886.61) | $ (488.57) | $ 451,685.30 | $ 143,838.63 | $ 307,846.67 |
| Quick Stop **(STD)** | $ 53,568.47 | $ (7,454.83) | $ 5.16 | $ 46,118.80 | $ 10,433.32 | $ 35,685.48 |
| Metro **(RW)** | $ 249,267.64 | $ (27,419.43) | $ 25.44 | $ 221,873.65 | $ 51,423.30 | $ 170,450.35 |
| Metro **(STD)** | $ 8,931.31 | $ (1,384.70) | $ 1.08 | $ 7,547.69 | $ 6,654.32 | $ 893.37 |
| **Total Balance** | $ 819,827.90 | $ (92,145.57) | $ (456.89) | $ 727,225.44 | $ 212,349.57 | $ 514,875.87 |

44.   Under Section 22 of the PSA, Metro and QuickStop are obligated to fully "save, indemnify, and hold harmless" Rutgers "from any and all liability loss, claims, actions, costs, including attorney fees resulting from … Pharmacy failure to meet duties specified in this Agreement or resulting from failure to comply with Federal, State, or Local Laws."

45.   On or about October 19, 2020, Anne Marie Diaz of 340Basics notified Donepudi and the Pharmacy Defendants via e-mail (the "340Basics Notice of Termination") that the PSA was being terminated by Rutgers, effective October 20, 2020 (the "Termination Date"), due to nonpayment and other breaches of the PSA.

46.   The 340Basics Notice of Termination also included the following demand to Donepudi and the Pharmacy Defendants:  "Your balance owing to Rutgers University shall be due within 30 days of your date of termination."

47.   Attached to the 340Basics Notice of Termination was a copy of a separate formal termination letter from Rutgers dated October 16, 2020 (the "Rutgers Notice of Termination"), in which Rutgers advised that: (a) the Pharmacy Defendants had failed to comply with provisions of the PSA by failing to remit payment due to the covered entity in a timely manner; (b) the covered entity had maintained the terms and conditions of the PSA by providing replenishment medications and financial true-ups to the

---

[1] As used in the Table, RW signifies eligible transactions by QuickStop and Metro for patients of Rutgers' Ryan White Clinic, and STD signifies eligible transactions by QuickStop and Metro for patients of Rutgers' STD Clinic

pharmacies and covering the costs of all 340B medications; (c) the pharmacies' failure to pay the balances due had resulted in arrears to the covered entity at a length beyond four months; and (d) the letter was to serve as notice of termination of the PSA, with the final day of participating claim capture to occur on October 20, 2020.

48.    Despite the demand for payment set forth in the 340Basics Notice of Termination, the Defendants failed to pay the balance owed to Rutgers within 30 days of the Termination Date as demanded in the 340Basics Notice of Termination.

49.    On or about August 20, 2021, Rutgers sent via Federal Express Overnight Delivery to Donepudi and Pharmacy Defendants a written notice of violations under the Act and breaches under the PSA, and demanded payment in full of all amounts due to Rutgers under the 340B Program (the "8/20/2021 Demand") no later than September 3, 2021 (the "Initial Deadline").

50.    Donepudi and the Pharmacy Defendants ignored the 8/20/2021 Demand, and the Initial Deadline passed without any response.

51.    After several failed attempts, counsel for Rutgers was finally able to reach Donepudi by phone on or about September 28, 2021 to discuss Rutgers' 8/20/2021 Demand.

52.    At that time, Donepudi advised that he disputed the amount that Rutgers claimed was owed, and needed one additional week to provide a full written response, including a full accounting of all transactions for Rutgers under the PSA, and backup documentation.

53.    By letter dated September 28, 2021, Rutgers' outside counsel confirmed in writing to Mr. Donepudi that Rutgers agreed to provide him one additional week, until close of business on October 5, 2021 (the "Extended Deadline"), to provide a written response, with a full accounting including any relevant backup documentation.

54.    Donepudi and the Pharmacy Defendants failed to provide any response by the Extended Deadline, and as of the date of this Complaint have neither responded nor provided any additional information, documentation, or payments to Rutgers.

## COUNT I

### BREACH OF CONTRACT

55.  Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

56.  The PSA constitutes a binding contract among Rutgers, Metro Pharmacy, QuickStop Pharmacy, and 340Basics.

57.  Donepudi signed the PSA on or about May 22, 2019 on behalf of both of the Pharmacy Defendants.

58.  Under the PSA, the Pharmacy Defendants were responsible to:

   (a) Dispense medications to eligible patients submitting prescriptions written by health care providers affiliated with the Rutgers Clinics (PSA ¶ 2.1a); and

   (b) Deposit all payments received from patients and third-party payor(s) into a 340B operating account created by Rutgers minus the dispensing fee provided for in the PSA (PSA ¶ 6.4).

59.  Based on the prescription transactions tracked through the 340Basics software program deployed under the PSA for the specific purpose of, among other things, tracking amounts owed to Rutgers and fees owed to the Pharmacy Defendants, the Pharmacy Defendants received $514,875.87 (the "Amount Due") that should have been deposited in the 340B operating account for the benefit of Rutgers.

60.  The Pharmacy Defendants' failure to deposit the Amount Due in the 340B operating account or otherwise pay the Amount Due to Rutgers constitutes a breach of the PSA.

61.  Rutgers has at all times complied with its obligations under the PSA.

62.  As a result of the Pharmacy Defendants' aforementioned breach, Rutgers has been damaged in the Amount Due.

63.  Under Paragraph 22 of the PSA, the Pharmacy Defendants are obligated to fully "save, indemnify, and hold harmless" Rutgers "from any and all liability loss, claims, actions, costs, including

attorney fees resulting from … Pharmacy failure to meet duties specified in this Agreement or resulting from failure to comply with Federal, State, or Local Laws."

64.   The Pharmacy Defendants' failure to make required payments under the PSA trigger the duty under Paragraph 22 of the PSA to save, indemnify, and hold harmless Rutgers from any and all liabilities and costs arising therefrom, including but not limited to attorneys' fees and court costs.

## COUNT II

### UNJUST ENRICHMENT

65.   Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

66.   By selecting the Pharmacy Defendants to serve as its contract pharmacies under the PSA and the 340B Program, Rutgers conferred a benefit upon the Pharmacy Defendants in the form of: (a) Dispense Fees resulting from prescriptions filled for the benefit of patients referred to the Pharmacy Defendants by and from the Rutgers Clinics; (b) goodwill within the local community as an exclusive provider of discounted pharmaceuticals under a federal program designed to assist certain underserved and vulnerable members of that community; and (c) increased traffic in the stores operated by Pharmacy Defendants, which increases the potential for incidental and other purchases by patients referred by the Rutgers Clinics.

67.   In exchange for the foregoing benefits conferred upon it by Rutgers, Rutgers expected the Pharmacy Defendants to promptly deposit or pay to Rutgers all amounts collected by the Pharmacy Defendants, less appropriate Dispense Fees earned under the PSA.

68.   The Pharmacy Defendants' failure to deposit or pay the Amount Due to Rutgers enriched the Pharmacy Defendants beyond their contractual rights under the PSA.

69.   The acts complained of above constitute unjust enrichment of the Pharmacy Defendants at Rutgers' expense in violation of the common law of the State of New Jersey.

70.   Based on the intentional, willful, and malicious nature of Defendants' actions, Rutgers is entitled to recover monetary damages, exemplary or punitive damages, and reasonable attorneys' fees and costs incurred in connection with this action.

## COUNT III

### CONVERSION

71.  Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

72.  Upon receipt of payments under the 340B Program, the Pharmacy Defendants were required to deposit same, minus Dispense Fees, into the 340B operating account for the benefit of Rutgers.

73.  As such, Rutgers was entitled to immediate possession of payments received by the Pharmacy Defendants under the 340B Program, less Dispense Fees.

74.  The Pharmacy Defendants wrongfully interfered with Rutgers' right to immediate possession of payments received under the 340B Program.

75.  Based on the tracking information provided by the 340Basics software designed for that very purpose, the Pharmacy Defendants wrongfully interfered with Rutgers' right to immediate possession of $514,975.87 (the Amount Due) in payments received by the Pharmacy Defendants for the benefit of Rutgers.

76.  As a result of the foregoing conversion of the Amount Due by the Pharmacy Defendants, Rutgers has been damaged in the amount of $514,975.87.

## COUNT IV

### DEMAND FOR FULL AUDIT AND ACCOUNTING

77.  Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

78.  Under Paragraphs 9.1c and 12 of the PSA, the Pharmacy Defendants were required to maintain all records required under federal, state, and local laws, and to make such records available for inspection or audit, including audit by 340Basics on behalf of Rutgers to ensure compliance by the Pharmacy Defendants.

79.  Between approximately July 13, 2020 through November 5, 2020, Rutgers and 340Basics

tried to schedule conference calls and meetings with defendant Donepudi on multiple occasions, not only to discuss the Pharmacy Defendants' default in making 340B Program payments to Rutgers, but to review all 340B Program backup documentation in order to demonstrate the correct amount owed to Rutgers.

80.   Donepudi initially ignored these requests, and even when the parties managed to confirm an appointment to speak by phone or meet in person, Donepudi failed to show up and/or participate on at least three separate occasions.

81.   In any event, Donepudi never produced any accounting, audit, or backup documentation to demonstrate in any way that the amounts claimed by Rutgers to be due to it under the PSA were incorrect or inaccurate.

82.   On or about September 28, 2021, defendant Donepudi advised counsel for Plaintiff that he was working on and would finally deliver a full accounting of all 340B Program transactions handled on behalf of Rutgers, including all relevant backup documentation, by October 5, 2021.

83.   On or about September 28, 2021, counsel for Rutgers demanded in writing that Donepudi deliver a full accounting of all 340B transaction handled on behalf of Rutgers, including all backup documentation, no later than close of business on October 5, 2021.

84.   To this day, Donepudi has failed to deliver any accounting to Rutgers.

<u>**COUNT V**</u>

**BREACH OF GOOD FAITH AND FAIR DEALING**

85.   Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

86.   All contracts include an implied covenant of good faith and fair dealing owed by each party to the other.

87.   The PSA constitutes a valid and binding contract under New Jersey law.

88.   In rendering performance of its obligations under the PSA, plaintiff Rutgers at all times acted in good faith and dealt fairly with the Pharmacy Defendants.

89.   In contrast, on behalf of the Pharmacy Defendants, defendant Donepudi repeatedly lied, misrepresented the timing and amount of payments that would be made, and otherwise delayed the making of payments due to Rutgers under the PSA.

90.   Such acts and failure to perform by the Pharmacy Defendants and Donepudi constitute a breach of the covenant of good faith and fair dealing owed to Rutgers under the PSA.

91.   As a result of the foregoing breach by Defendants, Rutgers has suffered damages.

<u>COUNT VI</u>

**FRAUD/FRAUDULENT MISREPRESENTATION**

92.   Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

93.   The foregoing conduct by defendant Donepudi, by which he ignored requests for payment, feigned ignorance about accessing and using the 360Basics software to make necessary payments, breached a promise to complete ACH forms forwarded by Rutgers in order to expedite 360B Program payments to Rutgers, agreed to participate in meetings and calls to discuss making payments and then failed to show up, agreed but failed to provide an accounting and/or backup documentation to demonstrate alleged but never explained challenges to Rutgers' claims for payments under the PSA, reneged on promises to have checks prepared and waiting for pickup by Rutgers, and ignored written demands by Rutgers' outside counsel for payment in full of all amounts owed under the PSA and an accounting/audit with full backup documentation to support any alleged challenges to the amount claimed to be owed, were all part and parcel of a scheme by Donepudi and the Pharmacy Defendants to delay making payments to Rutgers in order to obfuscate the fact that Donepudi had no intention of making the required payments.

94.   Specifically, Donepudi made the following statements/representations to Rutgers that he knew to be false at the time he made them:

> a.   On or about July 13, 2020, Donepudi promised Latasha Upshaw, Program Coordinator of the New Jersey Medical School at Rutgers, that he would complete the ACH forms she had sent him for both Metro Pharmacy and QuickStop

Pharmacy in order to expedite electronic payments to Rutgers for April and May that should have been paid in June/early July – in fact, Donepudi never completed those forms and had no intention of doing so, as evidenced by the fact that he ignored written follow-up inquiries from Ms. Upshaw on August 5, 2020, August 14, 2020, and August 19, 2020, and never completed the ACH forms needed to facilitate payments to Rutgers;

b. During a telephone call on or about September 15, 2020, Donepudi promised Ms. Upshaw that he would expedite payment for the total balance owed by mailing and check and simultaneously faxing a copy to evidence payment – in fact, Donepudi never made any such payment and had no intention of doing so, as evidenced by the fact that he ignored Ms. Upshaw's September 17, 2020 e-mail confirming their conversation, reiterating the amount due, providing payee information, and asking when the check will be mailed;

c. Via text to Donepudi on or about September 25, 2020, Ms. Upshaw again inquired when he would be making payment to Rutgers. Donepudi responded, "Im [sic] working on them. We will start issuing those checks next week I didn't forget. U will have all the checks. Im in mtg all day but I will call". These statements by Donepudi were knowingly false as evidenced by the fact that he did not call, was not working on making payments, and did not issue checks to Rutgers the following week.

d. On or about September 30, 2020, Ms. Upshaw texted Donepudi demanding to know where she could pick up the promised checks, inquiring whether he could pay off the then-owed sum of $423,650 via a 4-week payment plan, and asking when he is available the following week to discuss these issues. At this point, 6 months into performance under the PSA, Donepudi responded that he couldn't log into the system to review the invoices, asked 360Basics to get him log in access, and also stated, quite inconsistently, that "I will get those checks rightaway". Via e-mail that same day, Donepudi stated, " I will work on them today and this week. I would like to get this done." These statements were knowingly false, as evidenced by the fact that no payments were made to Rutgers that week as originally promised, or the week after

that as subsequently promised. When checks finally did arrive at the end of October 2020, they were for approximately half of the more than $423,000 that was owed at that time.

e. On or about October 2, 2020, Donepudi knowingly and falsely tried to blame the delays in payment on the insurance companies: "Just a reminder insurance companies pay us in 45 to 60 days from the date of claim. As of today we're still getting insurance checks from beginning of August." Ms. Upshaw rightly called Donepudi out on this knowingly false misrepresentation by stating, "Yes I'm aware. The past dues date back to claims from April." It can be inferred from Donepudi's statement about the timing of insurance payments that as of October 2, 2020, he had been sitting on payments received from the insurance companies for 360B Program transactions processed during the first four months of the PSA, April, May, June, and July 2020.

f. From here on out, Donepudi grew even more difficult:

   i. He promised and then failed to call Ms. Upshaw on October 7, 2020;

   ii. He committed, several days in advance, to a 2 pm conference call on October 13, 2020 with Ms. Upshaw and other representatives of Rutgers and 360Basics, but failed to call in or respond to texts sent inquiring as to his whereabouts shortly after the meeting was to have begun;

   iii. On or about October 29, 2020, Ms. Upshaw reached out to find out if she could pick up another check at Metro Pharmacy the following day – Donepudi never responded;

   iv. On or about November 5, 2020, Ms. Upshaw e-mailed Donepudi the updated outstanding balance and asked when she could pick up the next check – Donepudi never responded.

   v. On or about September 28, 2021, Donepudi stated that he was working on and would finally deliver a full accounting of all 340B Program transactions handled on behalf of Rutgers, including all relevant backup documentation, by

October 5, 2021. No such accounting or any documentation were ever delivered.

95.   All of the foregoing statements by Donepudi were knowingly false and material not only to the Defendant Pharmacies' performance under the PSA, but to Rutgers' ability to fund and operate each of the Rutgers Clinics, which rely on timely receipt of funding under a federally mandated program designed precisely for that purpose.

96. On information and belief, Donepudi made the foregoing false and misleading statements with the intent that Rutgers rely on them.

97.   Rutgers did, in fact, rely on Donepudi's false and misleading statements by continuing to work with Donepudi and the Pharmacy Defendants month after month, relying on Donepudi's repeated false promises that payment would be made and that he wanted to get back on track.

98.   Rutgers' reliance on Donepudi's false and misleading statements was to its detriment because the Amount Due of $514,875.87 remains unaccounted for, and has required Rutgers to make other financial arrangements to cover the loss of this anticipated revenue in order to continue operating its RW Clinic and STD Clinic, and to find an alternative contract pharmacy on an expedited basis so that the Rutgers Clinics could continue to serve their patients and Rutgers could maintain its status as a "Covered Entity" under the 360B Program.

99.   Rutgers' reliance is also to its detriment because it is responsible under the Act for any violations thereunder by the Defendant Pharmacies, an exposure that it now has to reserve for in assessing its financial budget for 2021, 2022, and beyond.

100. As a direct result of Donepudi's and the Pharmacy Defendants' intentionally false and fraudulent statements and representations, Rutgers has suffered, and will continue to suffer, damages.

## <u>COUNT VII</u>

## **NEGLIGENT MISREPRESENTATION**

101. Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

102. To the extent that the false statements and representations by Donepudi and/or the Pharmacy Defendants set forth in Paragraphs 88 - 90 were not made knowingly, willfully, or intentionally, they were, at a minimum, negligently made with the intent that Rutgers rely on them.

103. To the extent that the false statements and representations by Donepudi and/or the Pharmacy Defendants set forth in Paragraphs 88 - 90 were negligently made, Rutgers relied on them to its detriment as set forth in Paragraphs 93 - 95.

104. As a direct result of Donepudi's and the Pharmacy Defendants' negligent misrepresentations, Rutgers has suffered, and will continue to suffer, damages.

## COUNT VIII

## INDIVIDUAL LIABILITY OF BHAVANI DONEPUDI

105. Plaintiff hereby re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

106. Upon information and belief, defendant Donepudi is an owner, officer, and manager of the Pharmacy Defendants.

107. Defendant Donepudi, acting in his individual capacity, knowingly and significantly organized, directed, or otherwise participated in the unlawful and tortious conduct alleged herein, including the deliberate and fraudulent promises to pay Rutgers all amounts due under the PSA.

108. Defendant Donepudi is personally liable in this action because he knowingly and intentionally authorized, directed, approved, and personally conducted all of the unlawful acts and misconduct alleged herein.

109. As officer and manager of the Pharmacy Defendants, Donepudi cannot escape liability for his own tortious conduct for claims based on fraud.

110. Alternatively, Donepudi is personally liable because he abused the privilege of doing business in the corporate form of his controlled entities to perpetrate unlawful and fraudulent acts against the general public and Rutgers. Defendant Donepudi exercised dominion and control over the Pharmacy

Defendants and treated them as his alter ego in order to facilitate and effectuate the unlawful conduct alleged herein.

111. Accordingly, the Pharmacy Defendants are each an alter ego of defendant Donepudi, justifying the piercing of the Pharmacy Defendants' corporate veil and corporate existence to impose upon defendant Donepudi individual and personal liability for the claims asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rutgers requests entry of judgment against Defendants as follows:

A.      Ordering the Defendants to pay to Rutgers the full Amount Due under the PSA;

B.      Ordering Defendants to reimburse Rutgers for any and all costs and expenses, including but not limited to attorneys' fees and costs, arising from Defendants' failure to fulfill its obligations under the PSA;

C.      Ordering a complete accounting of all monies paid to Defendants pursuant to the 340B Program implemented under the PSA with Rutgers;

D.      Ordering the creation of a constructive trust made up of all amounts paid to Defendants pursuant to the 340B Program implemented under the PSA with Rutgers that are either (a) still in Defendants' possession, custody, or control and/or (b) can be traced to third-parties;

E.      Ordering Defendants to indemnify Rutgers for any and all liabilities, claims, losses, or damages arising from Defendants' breach of the PSA with Rutgers, including but not limited to attorneys' fees and costs; and

F.      Such other and further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff Rutgers, The State University of New Jersey demands trial to a jury on all issues so triable.

Date:  January  26, 2022                    Respectfully submitted,


**FEIN, SUCH, KAHN & SHEPARD, PC**
Attorneys for Plaintiff Rutgers, The State
University of New Jersey

By: */s/ Alan S. Golub*
Alan S. Golub
7 Century Drive, 2nd Floor
Parsippany, New Jersey 07054
Tel.: 973.538.4700, Ext. 3282
Fax: 973.397.2976

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Under Local Civil Rule 11.2, the undersigned counsel for Plaintiff Rutgers, The State University of New Jersey, hereby certifies that, to its knowledge, this matter is not the subject of any other action asserted by the parties herein in any court, or of any pending arbitration or administrative proceeding.

Date:  January 26, 2022

**FEIN, SUCH, KAHN & SHEPARD, PC**
Attorneys for Plaintiff Rutgers, The State
University of New Jersey

By: */s/ Alan S. Golub*
Alan S. Golub
7 Century Drive, 2nd Floor
Parsippany, New Jersey 07054
Tel.: 973.538.4700, Ext. 3282
Fax: 973.397.2976

## <u>LOCAL CIVIL RULE 201.1 CERTIFICATION</u>

Under Local Civil Rule 201.1, the undersigned counsel for Plaintiff Rutgers hereby certifies that it seeks monetary damages in excess of $150,000 and other equitable relief, and therefor this action is not appropriate for compulsory arbitration.

Date:  January 26, 2022

**FEIN, SUCH, KAHN & SHEPARD, PC**
Attorneys for Plaintiff Rutgers, The State
University of  New Jersey

By: *<u>/s/ Alan S. Golub</u>*
Alan S. Golub
7 Century Drive, 2nd Floor
Parsippany, New Jersey 07054
Tel.: 973.538.4700, Ext. 3282
Fax: 973.397.2976